

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2007

# Arnold v. Comm of PA Transp

Precedential or Non-Precedential: Precedential

Docket No. 05-5037

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Arnold v. Comm of PA Transp" (2007). *2007 Decisions*. Paper 1537.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1537

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-5037

AUGUST W. ARNOLD

v.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF TRANSPORTATION;
JOHN EKIERT

MICHAEL BAKER CORPORATION,
Appellant

Case No: 05-5227

AUGUST W. ARNOLD

v.

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF TRANSPORTATION;
JOHN EKIERT

TRIBUNE REVIEW PUBLISHING COMPANY,
Intervenor/Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No.: 03-cv-638
District Judge: The Honorable Joy F. Conti

_____

Argued December 13, 2006

Before: SMITH and ROTH, *Circuit Judges*, and
YOHN, *District Judge**

(Filed:February 20, 2007)

_____

Counsel:
Ronald D. Barber (Argued)
H. Yale Gutnick
Strassburger McKenna Gutnick & Potter, P.C.
Four Gateway Center, Suite 2200
444 Liberty Avenue
Pittsburgh, PA 15222
          *Counsel for Appellant/Cross Appellee*

*The Honorable William H. Yohn, Senior District Judge for
the Eastern District of Pennsylvania, sitting by designation.

2

Kim M. Watterson (Argued)
Efrem M. Grail
Joseph F. Rodkey, Jr.
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219
     *Counsel for Appellee/Cross Appellant*

_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge*.

This appeal is an offshoot of litigation initiated by August W. Arnold against his former employer, the Pennsylvania Department of Transportation ("PennDOT"), for violations of the Pennsylvania Whistleblower Law and 42 U.S.C. § 1983. Arnold served a discovery subpoena under Federal Rule of Civil Procedure 45 on appellant and cross appellee, non-party Michael Baker Corporation ("Baker"), seeking information regarding entertainment of PennDOT personnel by Baker. Baker resisted the subpoena and Arnold moved to enforce it.

On August 3, 2005, the District Court entered a confidentiality order which designated all information contained in Baker's response to the discovery subpoena as confidential information to be shared only with designated individuals during the course of the litigation. Baker produced the requested

information without further opposition. The parties settled the case on September 16, 2005.

On September 27, 2005, appellee and cross appellant, Tribune-Review Publishing, Inc. ("Tribune-Review"), filed a motion to intervene in which it requested that the Court vacate the confidentiality order on the grounds that analysis of the factors enunciated in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994) no longer favored protection of Baker's response to the subpoena. The District Court held a hearing on the motion on November 2, 2005, and ruled that the confidentiality order would be lifted as to the names of the public employees whose attendance was confirmed and the locations and costs of the entertainment. The Court ordered that the names of the individual Baker employees involved were not to be disclosed, nor were the names of invited, but unconfirmed, PennDOT employees.

Baker contests the District Court's partial lifting of the confidentiality order. The Tribune-Review asserts that the District Court was correct to the extent that it lifted the confidentiality order, but erred in failing to lift the order with respect to the names of the government contractors and individual PennDOT employees as well. The issue before this Court is whether the District Court's application of the multi-factor balancing test laid out in *Pansy* was correct. We hold that the Court correctly applied the *Pansy* test.

4

I.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. *See, e.g.*, *In re Pressman-Gutman Co., Inc.*, 459 F.3d 383, 395-96 (3d Cir. 2006); *see also Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). There are three elements to a collateral order: "the order in question must: '(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment.'" *In re Pressman-Gutman Co., Inc.*, 459 F.3d at 395-96 (quoting *Will v. Hallock*, 546 U.S. 345, 126 S.Ct. 952, 956 (2006)). All are satisfied here. *See Shingara v. Skiles*, 420 F.3d 301, 304-05 (3d Cir. 2005); *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 n.4 (3d Cir. 1991) ("[O]rders releasing sealed material and denying a motion to unseal are collateral orders within the meaning of 28 U.S.C. § 1291.").

The standard of review of a grant or modification of a confidentiality order is abuse of discretion. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 783 (3d Cir. 1994). "An abuse of discretion occurs when a district court's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006) (quoting *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir.1993)). "However, we exercise plenary review over the district court's

5

interpretation and application of the legal standard for granting or modifying a confidentiality order." *Id.* at 783-84. Upon a challenge to a protective order by a party who did not have the opportunity to oppose the motion for the order, the Third Circuit requires "good cause to maintain the order in the face of a motion to vacate it." *Shingara*, 420 F.3d at 306.

## II.

In *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), this Court held that good cause in support of a protective order could be determined by balancing a number of considerations. *Id.* at 787. We had previously adopted a definition of "good cause" in *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059 (3d Cir. 1986): "a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Id.* at 786 (quoting *Publicker Indus.*, 733 F.2d at 1071). The *Pansy* Court identified the following factors of the good cause balancing test: (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* at

787-88. The District Court reviewed each of these factors in modifying the existing confidentiality order. Because we review the District Court's application of the *Pansy* factors, our review of Baker's appeal and the Tribune-Review's cross appeal is for abuse of discretion. *See id.* at 783.[1]

## III.

On appeal, Baker argues that the District Court's initial protective order was appropriate under Federal Rule of Civil Procedure 26(c) because it was fully supported by good cause. Baker points to the District Court's acknowledgment that Baker is a private non-party that could suffer harm from the general release of its information as support for the Court's prior finding of good cause in a manner consistent with the guidance in *Pansy*. The Court indicated that the disclosure of Baker's materials would be harmful because "sometimes a spin can be put on things, if things become public, that has some unintended consequences, whether there is any wrong or not." However, the District Court never explicitly engaged in the balancing process prescribed in *Pansy*. Instead, the District Court sua sponte suggested that the disclosure of records relating to entertainment of PennDOT officials at Pittsburgh Pirates baseball games and on golf outings "can be solved by a confidentiality agreement," to which both parties agreed.

---

[1]We have plenary review over the District Court's interpretation of the *Pansy* factors, but find no error. *See id.*

7

When a party seeks modification of a confidentiality order, they must "come forward with a reason to modify the order." *Pansy*, 23 F.3d at 790. This Court has acknowledged that "[i]mprovidence in the granting of a protective order is [a] justification for lifting or modifying the order." *Id.* (quotation omitted). The Tribune-Review asserts that one of the reasons it is entitled to seek modification of the protective order is that the District Court improvidently failed to engage in the *Pansy* balancing test in making its determination of good cause. The *Pansy* opinion instructs that "a district court should articulate on the record findings supporting its judgment" as to a protective order, and explained that "[i]t would be improper and unfair to afford an order presumptive correctness if it is apparent that the court did not engage in the proper balancing to initially determine whether the order should have been granted." *Id.* at 789-90.

Although the District Court gave at least cursory consideration to the good cause standard, the Court did not initially engage in the balancing required by *Pansy*. Consequently, the District Court's order enjoyed no presumption of correctness. Because the Tribune-Review came forward with this reason to modify the order,[2] the Court properly elected to

---

[2]An alternative reason for modification is that circumstances have changed such that "the secrecy interests deserve less protection than they did when the order was granted." *Id.* at 791 (quoting Note, *Non-Party Access to Discovery in Federal*

"balance the interests, including the reliance by the original parties to the order, to determine whether good cause still exists for the order." *Pansy*, 23 F.3d at 790.

With respect to the first factor, the District Court preliminarily determined that the individual PennDOT employees and Baker had no privacy interests worthy of protection under a confidentiality order. As to the individual Baker employees, however, the Court determined that, with the exception of those employees who had already been disclosed,

> [T]he embarrassment may be particularly serious, particularly because of the statements made by the Secretary of Transportation [condemning the attendance of PennDOT employees at events funded by contractors] with respect to dishonesty.... And since those people are not parties to this litigation, they're not the subject of any criminal inquiry or any other matter that would give rise to this, and without any information that those individuals have signed a

*Courts*, 94 HARV. L. REV. 1085, 1092 (1981)). The District Court treated the introduction of an intervenor arguing the public interest as a "changed circumstance," because the "issue of public interest and public concern ... was not really raised to a great extent in the prior hearings." The presence of an intervenor is not a changed circumstance of the sort that would demonstrate that the secrecy interests involved are lessened.

9

contract with PennDOT, I would find that this privacy interest weighs in favor of the individual Michael Baker employees....

The Court also ruled that it would not disclose the names of individual PennDOT employees that were included on invitee lists, but not confirmed as attendees. This ruling accorded with *Pansy*, in which the Court explained that "[i]t is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties who the court reasonably finds are entitled to such protection." 23 F.3d at 787.

The District Court found the second factor, the legitimacy or illegitimacy of the purpose for which the information is being sought, to weigh in favor of the Tribune-Review. The Court explained that the newspaper's objective was "to continue its coverage of a matter of public concern, [and] I believe that this does rise to the level of public concern in terms of the conduct of public employees with respect to contractors and whether or not this has increased the costs of services and use of taxpayer money in making payments for projects throughout the Commonwealth." However, the Court did not find this "purpose" factor to weigh in favor of disclosure of the Baker employees, "because they are not public employees whose activities should be necessarily scrutinized."

Third, the District Court addressed the question of whether disclosure would cause a party embarrassment. Citing

its discussion of the privacy interests involved, the Court initially stated that the prevention of embarrassment weighed in favor of the individual Baker employees. The Court later denied disclosure of the individual PennDOT employees whose names appeared only on invitee lists, but whose attendance was not verifiable via some other non-interrogatory source. In *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995), this Court noted that when parties "do not describe their harm other than in generalized allegations of injury to reputation and to relationships with clients," they have not satisfied the embarrassment factor in the good cause analysis. *Id.* at 484. The District Court identified the potential embarrassment of being associated with dishonest and unethical activities, as "embarrassment [that] may be particularly serious."

The fourth factor is whether confidentiality is being sought over information important to public health and safety. The District Court determined that, although there was clearly a matter of public interest here, the public health and safety was not implicated because the issue was, at root, one of government expenditure. Accordingly, the Court ruled that the fourth factor was essentially neutral.

With respect to the fifth factor, the District Court ruled that the sharing of information among litigants would not promote fairness and efficiency in this case because the underlying dispute had been settled.

11

The District Court analyzed the sixth and seventh factors together, i.e., whether the beneficiary of the order is a public entity or official and whether the case involves issues important to the public. The Court determined that the sixth factor weighed against the PennDOT employees, and the seventh factor weighed in favor of the motion for relief. It is undisputed that PennDOT is a public entity, its employees are public officials, and the awarding of government contracts is a matter of public interest.

Baker claims that the District Court erred in its assessment of the "public person" element when it stated that "if we didn't have a public entity involved, it would be a very different case." Baker alleges that the District Court improperly treated it as if it were a public entity, but discounts the multiple times in the record that the Court acknowledged the private nature of Baker's business and the privacy interests of its employees. In fact, the District Court's statement regarding the involvement of a public entity is entirely consistent with *Pansy*. 23 F.3d at 788 (distinguishing between cases where a public entity is involved and those where the parties are all private entities). Moreover, the District Court explained that its emphasis on the public interest in the hearing on the motion for modification was at least in part a remedial measure: "While there was some assessment of these factors in the prior stages, the Court did not weigh the [public] interest as greatly in those proceedings and, therefore, the Court will not uphold the confidentiality agreement in this matter." The *Pansy* Court

12

explained that the public interest was an important consideration in the good cause balancing test, *Pansy*, 23 F.3d at 788, and the District Court's consideration of that interest upon the motion for relief was an appropriate correction of its earlier omission.

The District Court properly gave significant weight to the public interests involved. In *Shingara v. Skiles*, we overturned a district court decision that "ultimately agreed with the defendants that the analysis should not turn on the fact that the [Pennsylvania State Police] is a public entity and the fact that this case involves issues of public concern." 420 F.3d at 306 (quotation omitted). *Shingara* emphasized the importance of the public interest factor and held that "the district court unacceptably downplayed the fact that this case involves public officials and issues important to the public." *Id.* at 307. Thus, the District Court's emphasis on the public interests at stake was appropriate in ruling on the motion for relief.

Baker's claim that the District Court contorted the privacy factor by equating Baker with a public entity as a result of its government business is not supported by the record. The District Court's explanation of its reasoning revealed that it considered Baker to be a private entity and its employees to be private individuals with respect to the privacy and public entity factors. Likewise, the District Court's determination that the public interest factor weighed in favor of disclosure was proper and was not premised on the misconception that Baker was a public entity, or the functional equivalent of one.

As to the privacy factor, the District Court acknowledged that the privacy interests of Baker's employees, but not Baker, were potentially implicated in the order. In explaining the privacy interest factor, our *Pansy* opinion noted that "[i]t is appropriate for courts to order confidentiality to prevent the infliction of unnecessary or serious pain on parties *who the court reasonably finds are entitled to such protection*." 23 F.3d at 787 (emphasis added). The District Court correctly found that, as an entity, Baker "clearly ha[d] no privacy interest" capable of protection at stake here. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."); RESTATEMENT (SECOND) OF TORTS § 652I Comment c. (1977).

The District Court's interpretation of the privacy interest factor with respect to the Baker employees was appropriate. Although the Tribune-Review challenges the District Court's assessment that disclosure of Baker employees' names would result in a defined and serious injury to them, the District Court reasonably held that the Baker employees would be subject to unnecessary injury in the form of embarrassment, and that this embarrassment and damage to their reputations would be particularly serious.

In balancing the "requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled," the District Court properly exercised its discretion. *See* Arthur R. Miller, *Confidentiality, Protective Orders, and*

14

*Public Access to the Courts*, 105 HARV. L. REV. 427, 433-34 (1991). Furthermore, as the *Pansy* Court noted, "[t]he factors ... are unavoidably vague and are of course not exhaustive." *Pansy*, 23 F.3d at 789. The District Court correctly considered and applied these factors to the facts presented.

Baker also asserts that, in modifying the order, the District Court failed to recognize and properly account for its reliance upon the protective order, as required by *Pansy*. *Id.* at 789-90 ("In determining whether to *modify* an already-existing confidentiality order, the parties' reliance on the order is a relevant factor."). In *Pansy*, the Court made it clear that, in considering motions to modify protective orders, the district courts were to follow the same balancing test used in deciding whether to grant them, "with one difference: one of the factors the court should consider ... is the reliance by the original parties on the confidentiality order." *Id.* at 790. The Court further explained that "[t]he parties' reliance on an order, however, should not be outcome determinative, and should only be one factor that a court considers when determining whether to modify an order of confidentiality." *Id.* The District Court properly considered Baker's reliance as one of the factors in the balancing test.

In considering Baker's reliance, the District Court noted that "the reliance is that you've done the work [of answering the interrogatory], as you've argued, to prepare it in a fashion that's easily discernable and that someone doesn't have to go through

15

multiple documents or do a deposition, so you made it easier for access to the information...." The Court ruled that this factor weighed in favor of Baker. Although Baker's reliance was not necessarily limited to its work in compiling the information as an interrogatory answer, the District Court did not abuse its discretion in so ruling because it examined all of the factors and determined that the balance weighed in favor of partial disclosure.

On balance, the District Court concluded that the factors weighed in favor of disclosure of items relating to Baker, public employees whose attendance at the events was confirmed, and the places and costs of the entertainment provided. However, the Court ordered the redaction of information relating to individual Baker employees and PennDOT employees who were not confirmed attendees at the events. As instructed in *Pansy* and its progeny, the District Court carefully considered the public interest. *See Shingara*, 420 F.3d at 308 ("*Pansy* emphasized that a court always must consider the public interest when deciding whether to impose a protective order."). The Court did not abuse its discretion in entering this order. Thus, Baker's challenge to the partial lifting of the confidentiality order will be denied and the District Court's judgment will be affirmed.

IV.

The Tribune-Review cross appeals from the District Court's order, claiming that the Court should have ordered

16

disclosure of all of the information contained in the interrogatory, and should not have withheld the names of the individual Baker employees or the names of PennDOT officials that appeared on unconfirmed invitee lists. In support of its cross appeal, the Tribune-Review argues that the Court's ruling was too speculative as to whether the names appeared in the discovery materials. *Pansy* requires a clearly defined and serious injury, shown with specificity. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994).[3] Although we recognize that "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing," we find no such broad allegations here. *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir.1986)). As explained, the District Court articulated its reasons for granting closure as to the individual Baker employees and unconfirmed PennDOT invitees.

The Tribune-Review argues that Baker's participation in government contracting "exposes to public scrutiny any transaction in which value flows back from Baker to the government offices with which it contracts." The Tribune-

---

[3]The District Court had not seen the interrogatory answer in question at the time of the hearing, and therefore could only assume that its contents included the names of individual Baker employees and individuals at PennDOT who were invited to attend events but whose attendance had not been confirmed. The interrogatory answer was not submitted to this Court.

Review asserts that this exposure should correlate to a lesser degree of privacy interests, and argues that the privacy interests of private contractors who entertain public employees are nearly identical to the privacy interests of public employees. The *Pansy* Court noted that "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." 23 F.3d at 787.

The District Court reasonably applied the *Pansy* factors by ruling that the individual PennDOT employees whose names appeared only on invitee lists, but not on confirmed attendance lists, should be excluded from disclosure. The Tribune-Review challenges this application, arguing that the names should be released on the ground that they show how far into the PennDOT hierarchy the invitations were intended to reach. However, our review is for abuse of discretion, and we cannot say that the District Court improperly exercised its discretion.

In evaluating the *Pansy* factors with respect to the individuals, the District Court noted its concern for the individuals who may have been "there because they [were] directed by their bosses to be there and may have [had] no reason to believe that there was anything wrong." The Court also noted the difficulty in protecting the privacy of those individuals who received invitations but did not attend, because those individuals' interests were not represented. The Court's demonstrated concern for the individuals and their exposure to potentially unjustified embarrassment, when considered in

18

conjunction with the Court's discussion of the other *Pansy* factors, shows that the Court appropriately balanced the competing considerations. Although the case involved issues of public importance and the actions of public officials, the Court properly exercised its discretion in rendering its ruling.

V.

The District Court's modification of the confidentiality order will be affirmed on the grounds that it constituted an appropriate exercise of discretion. In evaluating the claim that good cause existed for a confidentiality order, the Court properly considered the factors outlined in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994).